

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**SOUTHERN BANK & TRUST COMPANY,**

Plaintiff,

v.                                                                          Civil No. 2:12cv450

**PRAESTANS ONE, LLC, et al.,**

Defendants.

## OPINION AND ORDER

This is an action for breach of a promissory note and several related guaranties. The Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. § 1332 based upon complete diversity of citizenship between the parties and an amount in controversy in excess of $75,000. In this action, plaintiff Southern Bank & Trust Company ("Southern") seeks to recover damages for breach of a promissory note from the borrower, defendant Praestans One, LLC ("Praestans One"), and damages for breach of guaranty from five of the borrower's guarantors, defendants Ramesh C. Joshi, Sanjay M. Amin, Vijay R. Modi, Naresh Amin, and Prem P. Agarwal (collectively, the "Guarantors").[1]

The matter is now before the Court on the plaintiff's motion for summary judgment with respect to the Guarantors, filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2] For

_____

[1] The complaint also names a sixth guarantor, Naynesh P. Amin, as a defendant. On December 31, 2012, Mr. Amin filed for bankruptcy, automatically staying proceedings in this case as to him alone. In re Naynesh P. Amin, No. 12-75311 (Bankr. E.D. Va. filed Dec. 31, 2012); see also 11 U.S.C. § 362(a). On March 13, 2013, defense counsel notified the Court by filing a suggestion of bankruptcy in this case. On March 14, 2013, the Court entered an Order expressly staying proceedings in this case as to defendant Naynesh P. Amin, but directing that the action proceed as to all other defendants.

[2] The Court notes that the plaintiff does not at this time seek summary judgment against Praestans One on the underlying note.

the reasons set forth herein, the plaintiff's motion is **GRANTED** and judgment will be entered in its favor as against the Guarantors.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are largely undisputed. Praestans One is a Virginia limited liability company and the owner of a hotel in Chesapeake, Virginia. In August 2006, Praestans One borrowed $5,100,000 from Bank of the Commonwealth on a promissory note secured by a deed of trust on the hotel property. In September 2007, the loan and the principal amount of the note were increased to $5,440,000, and the note was further secured by guaranty agreements with the six individual investors who owned Praestans One.

Each of the Guarantors executed an identical form of Commercial Guaranty in which he or she agreed to "absolutely and unconditionally guarantee[] full and punctual payment and satisfaction of Guarantor's Share of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents." See, e.g., Pl.'s Ex. A, at 28. The term "Borrower" is defined as "Praestans One, LLC," and the term "Lender" is defined as "BANK OF THE COMMONWEALTH, its successors and assigns." See, e.g., id. at 30. The term "Note" is expressly defined in the Commercial Guaranty as "the promissory note dated August 24, 2006, in the original principal amount of $5,440,000 from Borrower to Lender, together with all modifications of and renewals, replacements, and substitutions for the promissory note or agreement." See, e.g., id. The term "Related Documents" is expressly defined in the Commercial Guaranty as "all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgagees, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the

- 2 -

Indebtedness." See, e.g., id.

In the Commercial Guaranty executed by Ramesh C. Joshi, the term "Guarantor's Share of the Indebtedness" is defined as follows:

> The words "Guarantor's Share of the Indebtedness" as used in this Guaranty mean an amount not to exceed One Million Two Hundred Seventy-five Thousand & 00/100 Dollars ($1,275,000.00) of the principal amount of the Indebtedness that is outstanding from time to time and at any one or more times. "Guarantor's Share of the Indebtedness" also includes all accrued unpaid interest on the Indebtedness and all collection costs, expenses and attorneys' fees whether or not there is a lawsuit, and if there is a lawsuit, any fees and costs for trial and appeals paid or incurred by Lender for the collection of the Indebtedness, the realization on any collateral securing the Indebtedness or any guaranty of the Indebtedness (including this Guaranty), or the enforcement of this Guaranty.

Id. at 28.  The term "Indebtedness" is further defined to mean the amount of $1,360,000.  Id.

The Commercial Guaranty executed by Sanjay M. Amin contains identical language guaranteeing payment of up to $1,275,000 of the principal of the loan, and defining "Indebtedness" to mean the amount of $1,360,000.  Pl.'s Ex. B, at 28.  The Commercial Guaranty executed by Prem P. Agarwal contains identical language guaranteeing payment of up to $1,275,000 of the principal of the loan, but it defines "Indebtedness" to mean the amount of $1,275,000.  Pl.'s Ex. F, at 28.  The Commercial Guaranties executed by Vijay R. Modi and Naresh Amin each contain identical language guaranteeing payment of up to $637,500 of the principal of the loan, and defining "Indebtedness" to mean the amount of $637,500.  Pl.'s Exs. C and E, at 28.  Other than the named guarantor and the maximum amount of principal and accrued unpaid interest guaranteed, these five guaranties are identical in all material respects.  See ECF No. 21 attachs. 1–6.

Praestans One defaulted on the Note by failing to make payments when due.  By letter dated April 12, 2011, Bank of the Commonwealth, the holder of the Note at that time, exercised its contractual right to declare the entire unpaid principal balance under the Note and all accrued

unpaid interest and other charges immediately due and payable, and it demanded that Praestans One or its guarantors pay the loan in full. Praestans One and its guarantors failed to make payment as demanded.

In September 2011, Bank of the Commonwealth was closed by state banking regulators and its assets, including the Note and Commercial Guaranties involved in this matter, were acquired by Southern Bank and Trust Company, the plaintiff in this matter. On August 2, 2012, Southern filed the complaint in this action, seeking to recover from Praestans One or its guarantors the full amount due under the Note, including $5,257,159.62 in principal, $604,503.29 in unpaid interest accrued through August 2, 2012, $33,688.47 in late charges, $33,688.47 in negative escrow, a $3,500 appraisal fee with respect to the mortgaged hotel property, and reasonable attorney fees and expenses incurred by Southern in this action.

On November 29, 2012, Southern filed a motion for summary judgment with respect to the Guarantors, together with a memorandum and exhibits in support. In this motion, Southern limited its request for damages to the principal, accrued interest, and reasonable attorney fees and expenses, and it chose to seek recovery at this time from the Guarantors alone. On December 10, 2012, the Guarantors filed a memorandum and exhibit in opposition to the motion. On December 17, 2012, Southern filed its reply memorandum. On February 27, 2013, the Court entered a Rule 56(e)(1) Order directing the parties to file supplemental briefs and supporting documents with respect to the amount of interest due and owing under the promissory note at issue in this case. On March 7, 2013, the plaintiff filed its supplemental brief and exhibits in support, and on March 13, 2013, the Guarantors filed their brief in response. The motion is now ripe for decision on the papers. See Local Civ. R. 7(J).

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." Id. In deciding a summary judgment motion, the Court must view the record as a whole and in the light most favorable to the nonmovant. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the nonmovant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." Anderson, 477 U.S. at 251-52.

## III. ANALYSIS

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a prima facie showing that it is entitled to summary judgment. See Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 331. Once that prima facie showing has been made, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. See Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 331.

### A. Southern's Prima Facie Case

Under Virginia law, a guaranty is "an independent contract, by which the guarantor

undertakes, in writing, upon a sufficient undertaking, to be answerable for the debt, or for the performance of some duty, in case of the failure of some other person who is primarily liable to pay or perform." McDonald v. Nat'l Enters. Inc., 547 S.E.2d 204, 207 (Va. 2001). To recover on a guaranty under Virginia law, Southern must establish: "the existence and ownership of the guaranty contract, the terms of the primary obligation and default on that obligation by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty contract." Id.

First, the existence and ownership of the guaranty contracts at issue in this case are not disputed. Copies have been attached both to the original complaint and to the plaintiff's summary judgment motion papers.

Second, the terms of the primary obligation and default on that obligation by the debtor are also not disputed. Copies of the August 2006 promissory note have been attached both to the original complaint and to the plaintiff's summary judgment motion papers, and each of the Guarantors has expressly admitted in response to written discovery that Praestans One has defaulted on the note.

Third, nonpayment of the amount due from the Guarantors under the terms of the Commercial Guaranties is not disputed. Copies of the Commercial Guaranties executed by the five individual Guarators have been attached both to the original complaint and to the plaintiff's summary judgment motion papers, and each of the Guarantors has expressly admitted in response to written discovery that no payment has been made.

Accordingly, the Court finds that Southern has made a prima facie showing that it is entitled to summary judgment on its guaranty claims against the five individual Guarantors.

## B. The Guarantors' Defenses to Recovery

With Southern having made out a prima facie case for recovery on the guaranties, the burden shifts to the Guarantors to demonstrate that there is a genuine issue for trial. See Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 331. The Guarantors have asserted three defenses to recovery on the guaranties at the summary judgment stage: (1) the Statute of Frauds; (2) the doctrine of mutual mistake; and (3) a genuine dispute of fact as to the amount of accrued unpaid interest.

### 1. The Statute of Frauds

The Guarantors contend that recovery is barred by the Virginia Statute of Frauds, Va. Code § 11-2(4), because the Commercial Guaranties signed by each of the Guarantors do not contain all the essential terms of the agreements they purport to embody.   Namely, the Guarantors argue that the various Commercial Guaranties fail to adequately identify the "indebtedness" of Praestons One guaranteed by each of the Guarantors, and the Commercial Guaranties do not include any terms addressing the applicable rate of interest to be charged on the indebtedness.

Under Virginia law, "a guaranty is a separate, collateral, and secondary undertaking to answer for the debt of another in event of his default." Am. Indus. Corp. v. First & Merchants Nat'l Bank, 219 S.E.2d 673, 675 (Va. 1975).  To be enforceable,

> the Statute of Frauds . . . requires that the agreement be in writing and signed by the guarantor.  While . . . the Statute of Frauds does not require that the complete agreement between the parties show on the face of the signed writing, the nature and extent of the undertaking, including the essential promise to pay the debt of another, must so appear or the agreement is not enforceable.  If reliance is based upon an unsigned writing, it must be referred to in the signed writing in clear and distinct terms.

Id. at 675–76 (citations omitted).

It is beyond dispute that the Commercial Guaranties are in writing and signed by each of

the individual Guarantors. The nature of the undertaking, including the essential promise to pay the debt of Praestans One, is clear on the face of each of the Commercial Guaranties. Moreover, the extent of the undertaking is also clear on the face of each instrument. The Guarantors have each agreed to pay their respective "Guarantor's Share of the Indebtedness" upon default by Praestans One. This includes a stated amount of principal—up to $1,275,000 for Joshi, Sanjay Amin, and Agrawal, and up to $637,500 for Modi and Naresh Amin—plus all accrued unpaid interest on the stated amount of "Indebtedness"—up to $1,360,000 for Joshi and Sanjay Amin, up to $1,275,000 for Agrawal, and up to $637,500 for Modi and Naresh Amin—and all collection costs, expenses and attorney fees. Moreover, it is clear on the face of each instrument that the Guarantors have each agreed to guarantee "the performance and discharge of all Borrower's obligations under the Note," with the "Note" (unsigned by the Guarantors) clearly and distinctly defined as "the promissory note dated August 24, 2006, in the original principal amount of $5,440,000.00 from Borrower to Lender."

Based on the foregoing, the Court finds that each of the Commercial Guaranties meets the requirements of the Virginia Statute of Frauds and is therefore enforceable as a matter of law.

### 2. Mutual Mistake

The Guarantors further contend that the Commercial Guaranties are the products of a mutual mistake, and the Court therefore should reform the guaranties to limit the potential liability of each of the Guarantors to a percentage equal to his or her ownership share of Praestans One, rather than the "Guarantor's Share of Indebtedness" stated on the face of the Commercial Guaranties. In particular, the Guarantors allege that the guaranties fail to accurately reflect an antecedent agreement between defendant Ramesh Joshi, in his capacity as an officer of Praestans One, and Simon Hounslow, a Bank of the Commonwealth employee, that the

guaranties of each individual guarantor would be limited to a percentage of the outstanding balance of the loan rather than a fixed amount. The Guarantors do not claim unilateral mistake based on any deceit, fraud, or inequitable conduct by Bank of the Commonwealth.

Under Virginia law, reformation on the ground of mutual mistake "'provides relief against a mistake of fact in a written instrument' where clear and convincing evidence demonstrates that 'both parties [enter into a written agreement] mistakenly believing it reflects their antecedent bargain.'" Tiger Fibers, LLC v. Aspen Specialty Ins. Co., 594 F. Supp. 2d 630, 643 (E.D. Va. 2009) (quoting Ward v. Ward, 387 S.E.2d 460, 462 (Va. 1990)) (alteration in original). Moreover, "[i]n determining whether a mutual mistake of fact existed at the time of the agreement, the inquiry is not . . . who initially made the mistake, but rather, whether each party held the same mistaken belief with respect to a material fact at the time the agreement was executed.'" Id. (quoting Collins v. Dep't of Alcoholic Beverage Control, 467 S.E.2d 279, 283 (Va. Ct. App. 1996)) (omission in original).

The only evidence identified in support of the Guarantors' claim of mutual mistake is a self-serving interrogatory answer in which defendant Joshi claims that Hounslaw agreed to limit the guaranties to a percentage of the outstanding balance of the loan to Praestans One rather than a fixed amount, and that Hounslaw assured Joshi that the loan documents would reflect this agreement. See Defs.' Ex. A, at 3–4. The Guarantors identify no other evidence of record, and none at all to suggest that the lender, Bank of the Commonwealth, shared their purported mistaken belief that the Commercial Guaranties defined "Guarantor's Share of the Indebtedness" as a percentage of the outstanding loan balance rather than a fixed amount. Indeed, each of the Commercial Guaranties clearly defines, on its face, the "Guarantor's Share of the Indebtedness" relative to a fixed amount of principal rather than a percentage, and each guaranty contains an

express representation by the respective Guarantor that "no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty." See, e.g., Pl.'s Ex. A, at 28. Moreover, each of the Commercial Guaranties concludes with a boldfaced and all-capitalized disclaimer, which includes the following language: "EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS." See, e.g., Pl.'s Ex. A, at 30.

Based on the foregoing, it is clear that the Guarantors have failed to present sufficient evidence of a mutual mistake of fact to require a trial on this issue. See Anderson, 477 U.S. at 249 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (citations omitted); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citations omitted).

### 3. Accrued Unpaid Interest

The Guarantors contend that a trial in this matter is necessitated by a genuine factual dispute as to the amount of accrued unpaid interest owed to Southern by each of the individual Guarantors. The Guarantors advance three different arguments on this point, arguing that: (1) the Commercial Guaranties do not explicitly provide for a particular interest rate, leaving a genuine dispute as to the amount of accrued unpaid interest owed; (2) the evidence submitted by Southern to establish the actual amount of accrued unpaid interest owed is inadmissible hearsay; and (3) Southern's calculation of accrued unpaid interest is in conflict with the terms of the

underlying note insofar as it is based upon the misapplication of foreclosure proceeds to the outstanding principal balance alone, rather than to the accrued unpaid interest.

### a. Absence of a Stated Interest Rate in the Commercial Guaranties

Each of the Commercial Guaranties contains the same language providing that "Guarantor's Share of the Indebtedness" includes "all accrued unpaid interest on the Indebtedness." The guaranties do not, however, contain any explicit interest rate, nor any other provisions pertaining to the calculation or payment of interest. Based on this, the Guarantors argue that the amount of accrued unpaid interest owed under each of the guaranties remains in dispute, necessitating a trial on this issue.

But the meaning of the term "interest" as used in the Commercial Guaranties is readily discernible from the underlying promissory note and modifications thereto. Under Virginia law, "[w]here a business transaction is based upon more than one document executed by the parties, the documents will be construed together to determine the intent of the parties; each document will be employed to ascertain the meaning intended to be expressed by the others." Countryside Orthopaedics, P.C. v. Peyton, 541 S.E.2d 279, 284 (Va. 2001); see also id. at 284–85 ("[W]ritings that form part of a single transaction and are designed to effectuate the same purpose [must] be read together, even though they were executed on different dates and were not all between the same parties.") (quoting another source).[3] This is particularly true when the agreements at issue contain explicit references to the other agreements. See id. at 285.

The original promissory note at issue in this case was executed on August 24, 2006. It provided explicitly that interest would accrue at a rate of 7.000% per annum. It further provided

---

[3] Indeed, regardless of jurisdiction, "it is well-settled law that several writings executed between the same parties substantially at the same time and relating to the same subject-matter may be read together as forming parts of one transaction". Bailey v. Hannibal & St. Joseph R.R. Co., 84 U.S. 96, 108 (1872).

that "[t]he annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the number of days the principal balance is outstanding." Pl.'s Ex. A, at 7. Finally, the original promissory note provided that, in the event of default, "the interest rate on this Note shall be increased by adding a 4.000 percentage point margin." Id.

On September 12, 2007, Praestans One and Bank of the Commonwealth executed a Change in Terms Agreement, which modified the loan payment schedule and increased the principal amount of the Note from $5,100,000 to $5,440,000. The Change in Terms Agreement reiterated the very same terms with respect to the applicable interest rate and method of calculating interest due.

Each of the individual Guarantors executed a Commercial Guaranty dated that same day. Each of the Commercial Guaranties provided that the individual Guarantor "absolutely and unconditionally guarantee[d] full and punctual payment and satisfaction of Guarantor's Share of Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and Related Documents." See, e.g., Pl.'s Ex. A., at 28. Each of the guaranties further provided that the individual "Guarantor's Share of Indebtedness" included "all accrued unpaid interest" on a stated amount of "Indebtedness." See, e.g., id. The capitalized term "Note" was defined in each of the guaranties as "the promissory note dated August 24, 2006, in the original principal amount of $5,440,000.00 from Borrower to Lender, together with all modifications of and renewals, replacements, and substitutions for the promissory note or agreement." See, e.g., id. at 30.

Praestans One and Bank of the Commonwealth entered into subsequent Change in Terms Agreements on January 28, 2009, July 13, 2009, and October 26, 2009. Each of these

subsequent agreements modified the loan payment schedule, but reiterated the very same terms with respect to the applicable interest rate and method of calculating interest due.

Construing the Commercial Guaranties together with the original promissory note, the contemporaneously executed Change in Terms Agreement, and the several subsequent Change in Terms Agreements, it is clear that the meaning of the term "interest" is intended to be the same in all of these related agreements. Accordingly, the Court finds no genuine dispute of fact with respect to the applicable interest rate and method of calculation. The Guarantors are each liable for accrued unpaid interest on the stated amount of Indebtedness at the default interest rate of 11% per annum, computed on a 365/360 basis.

### b. Admissibility of a Payment History Derived from Loan Servicing Records

In support of its motion for summary judgment, Southern has submitted the Declaration of James C. Hill, II, attached to which is a 57-page payment history for the loan, setting out, on a daily basis, the principal balance, the interest rate, the per diem interest charge, and the application of all payments received on the loan from its inception on August 24, 2006, through March 5, 2013. According to Mr. Hill's declaration, the payment history was prepared "directly from the servicing records of Southern Bank and Trust Company."

The Guarantors contend that this payment history is inadmissible hearsay, and it therefore does not provide a sufficient evidentiary basis upon which to grant summary judgment. See generally Fed. R. Civ. P. 56(c)(2). In particular, the Guarantors argue that Mr. Hill is not a "custodian or another qualified witness" whose testimony can establish the applicability of the business records exception to the hearsay rule, and that the payment history itself is not a business record as it was specifically prepared for this litigation. See generally Fed. R. Evid. 803(6).

The Guarantors contend that Mr. Hill is not a "qualified witness." Under the federal rules, however, "[a]n affiant who reviews the business records of the organization that he or she is affiliated with, and who testifies on the basis of information acquired through the performance of his or her official duties, may be deemed competent by the court to testify as to those records." Akers v. Beal Bank, 845 F. Supp. 2d 238, 242 (D.D.C. 2012). Mr. Hill's declaration expressly establishes that he is employed by Southern in the role of Vice President / Special Assets Manager, that he has "managerial authority over the servicing of the loan in question in this case," and that he has "reviewed the loan servicing records and reports for the loan at issue in this case and [his] declaration is based upon such review." Based on Mr. Hill's unrebutted declaration, it is clear that he is competent to testify with respect to the loan servicing records maintained by Southern for the loan in question.

The Guarantors further contend that this payment history cannot be considered on summary judgment because it is not a business record, and therefore it is inadmissible hearsay. "At the summary judgment stage, the parties need not submit evidence in a form admissible at trial; however, the content or the substance of the evidence must be admissible." Bryant v. Farmers Ins. Exch., 432 F.3d 1114, 1122 (10th Cir. 2005); see also Macuba v. DeBoer, 193 F.3d 1316, 1323 (11th Cir. 1999) ("[A] district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.'"). Although the payment history attached to Mr. Hill's declaration may not itself be a business record, excepted from the hearsay rule, the evidence it is based on—loan servicing records maintained by Southern and its predecessor lender, Bank of the Commonwealth—clearly would be admissible as business records. See EEOC v. Eagle Quick Stop, Inc., No. 2:05CV2074KS-MTP, 2007 WL 672101, at *2 (S.D. Miss. Feb. 28, 2007).

Moreover, a summary of this evidence similar to the payment history attached to Mr. Hill's declaration may be admissible at trial pursuant to Rule 1006 of the Federal Rules of Evidence. See id. Accordingly, the Court finds that the Hill declaration and attached payment history may properly be considered in support of the plaintiff's motion for summary judgment.

### c. Application of Foreclosure Proceeds to the Outstanding Principal Balance

The Guarantors raise one other objection to the plaintiff's calculation of the amount of accrued unpaid interest owed, arguing that an "involuntary payment"[4] of $3,164,259.70 applied on January 25, 2013, was incorrectly applied by Southern to the outstanding principal balance alone, rather than first to the outstanding balance of accrued interest, with any remainder then applied to the outstanding principal balance.  This objection is well-taken: pursuant to the express terms of the underlying promissory note at issue in this case, "payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges." See, e.g., Pl.'s Ex. A, at 7.  Other than correction of this misapplied payment, the Guarantors do not dispute the substance of the data set forth in the payment history.

### C. Calculation of the Guarantors' Liability

Prior to the application of foreclosure proceeds on January 25, 2013, there was no dispute as to the outstanding principal balance owed by Praestans One on the underlying note.  Southern claimed, and the Guarantors admitted, that the loan had an outstanding principal balance of $5,257,159.62.  In their response to Southern's supplemental brief, the Guarantors concede that the total accrued unpaid interest on the loan was $888,883.98 as of January 25, 2013.

On January 25, 2013, Southern applied foreclosure proceeds totaling $3,164,259.70 to the outstanding balance due on the underlying loan.  Pursuant to the terms of the underlying note,

---

[4] This "involuntary payment" represents the net proceeds of a foreclosure sale of the mortgaged hotel property that also secured the note at issue.

$888,883.98 should have been applied to eliminate the outstanding balance of accrued unpaid interest due at that time. The remaining balance of $2,275,375.72 in foreclosure proceeds then should have been applied to the outstanding principal balance on the loan, reducing the total outstanding principal balance to $2,981,783.90 as of January 25, 2013.

From January 25, 2013, to this date, interest has accrued on the outstanding principal balance of $2,981,783.90 on the underlying loan at the contractual default interest rate of 11% per annum—$911.10 per diem, computed on a 365/360 basis—for a total balance of $48,288.33 in accrued unpaid interest on the underlying loan. Each of the Guarantors, however, is obliged only to pay his or her respective Guarantor's Share of Indebtedness, which includes a stated amount of principal and accrued unpaid interest on a stated amount of Indebtedness.

Defendant Ramesh C. Joshi's guaranty is expressly limited to the stated amount of $1,275,000 in principal, plus accrued unpaid interest on Indebtedness in the stated amount of $1,360,000. From January 25, 2013, to this date, the interest component of Joshi's Guarantor's Share of Indebtedness has accrued at the contractual default interest rate of 11% per annum on the $1,360,000 stated amount of Indebtedness—$415.56 per diem, computed on a 365/360 basis—for a total balance of $22,024.44 in accrued unpaid interest on the stated amount of Indebtedness.

Defendant Sanjay M. Amin's guaranty is likewise expressly limited to the stated amount of $1,275,000 in principal, plus accrued unpaid interest on Indebtedness in the stated amount of $1,360,000. From January 25, 2013, to this date, the interest component of Sanjay M. Amin's Guarantor's Share of Indebtedness has accrued at the contractual default interest rate of 11% per annum on the $1,360,000 stated amount of Indebtedness—$415.56 per diem, computed on a 365/360 basis—for a total balance of $22,024.44 in accrued unpaid interest on the stated amount

of Indebtedness.

Defendant Vijay R. Modi's guaranty is expressly limited to the stated amount of $637,500 in principal, plus accrued unpaid interest on Indebtedness in the stated amount of $637,500.  From January 25, 2013, to this date, the interest component of Modi's Guarantor's Share of Indebtedness has accrued at the contractual default interest rate of 11% per annum on the $637,500 stated amount of Indebtedness—$194.79 per diem, computed on a 365/360 basis— for a total balance of $10,323.96 in accrued unpaid interest on the stated amount of Indebtedness.

Defendant Naresh Amin's guaranty is likewise expressly limited to the stated amount of $637,500 in principal, plus accrued unpaid interest on Indebtedness in the stated amount of $637,500.  From January 25, 2013, to this date, the interest component of Naresh Amin's Guarantor's Share of Indebtedness has accrued at the contractual default interest rate of 11% per annum on the $637,500 stated amount of Indebtedness—$194.79 per diem, computed on a 365/360 basis—for a total balance of $10,323.96 in accrued unpaid interest on the stated amount of Indebtedness.

Defendant Prem P. Agarwal's guaranty is expressly limited to the stated amount of $1,275,000 in principal, plus accrued unpaid interest on Indebtedness in the stated amount of $1,275,000.  From January 25, 2013, to this date, the interest component of Agarwal's Guarantor's Share of Indebtedness has accrued at the contractual default interest rate of 11% per annum on the $1,275,000 stated amount of Indebtedness—$389.58 per diem, computed on a 365/360 basis—for a total balance of $22,024.44 in accrued unpaid interest on the stated amount of Indebtedness.

Accordingly, the Guarantors are jointly and severally liable with borrower Praestans One and with one another for the outstanding principal balance and unpaid accrued interest owed on

the underlying note, up to the express limit stated in each of their respective guaranties, as computed herein.

## IV. CONCLUSION

For the foregoing reasons, the plaintiff's motion for summary judgment is **GRANTED**.

The Court **FINDS** the Guarantors are jointly and severally liable with defendant Praestans One and with one another in the sum of $3,024,867.96 (consisting of $2,981,783.90 in principal and $48,288.33 in accrued unpaid interest), up to the amounts of their respective guaranties, as set forth below:

(1) Ramesh C. Joshi: up to $1,275,000 in principal and $22,024.44 in accrued interest;

(2) Sanjay M. Amin: up to $1,275,000 in principal and $22,024.44 in accrued interest;

(3) Vijay R. Modi: up to $637,500 in principal and $10,323.96 in accrued interest;

(4) Naresh Amin: up to $637,500 in principal and $10,323.96 in accrued interest;

(5) Prem P. Agarwal: up to $1,275,000 in principal and $20,647.92 in accrued interest.

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is **DIRECTED** to enter final judgment in favor of the plaintiff and against the defendants Ramesh C. Joshi, Sanjay M. Amin, Vijay R. Modi, Naresh Amin, and Prem P. Agarwal in the amounts set forth above. Entry of judgment as to the individual defendants identified above shall be without prejudice to the rights of the remaining defendant in this action, Praestans One, and disposition of the action as to Praestan One shall abide the further trial of the action in all respects.

The Court further **FINDS** that good cause exists for the entry of judgment as directed above and that there is no just reason for delay of such judgment as the nature of the claims already determined is such that no appellate court will have to decide the same issue more than once even if there are subsequent appeals.

**IT IS SO ORDERED.**

March   , 2013
Norfolk, Virginia

/s/
Robert G. Doumar
Senior United States District Judge